IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:15-CR-191-002 |
| | ) |
| RONALD B. CHANEY, III, | ) |
| | ) |
| *Defendant*. | ) |

## UNITED STATES' POSITION ON SENTENCING and MOTION FOR UPWARD VARIANCE

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and Peter S. Duffey and Thomas A. Garnett, Assistant United States Attorneys, hereby submits its position with respect to sentencing. Accordingly, the United States believes that the total offense level for this defendant is properly calculated as 25, with a criminal history category of IV, yielding a guidelines range of 84-105 months on Count One, and a restricted guidelines range of 120 months on Count Two.

The United States argues that facts exist which warrant an upward variance in this case in light of the underrepresentation of Chaney's criminal history, his willing entrance into a conspiracy to commit armed robbery and murder barely eight months after completing a prison sentence for shooting two individuals during a botched armed robbery, to promote respect for the law, and to provide adequate deterrence. In addition to relying on Defendant's criminal history to support this variance, the United States submits that the Defendant's conduct and criminal history clearly demonstrate that he is a dangerous, violent recidivist.

1

Therefore, it is the Government's position that pursuant to the factors contained in 18 U.S.C. § 3553(a) and for the reasons set forth below, including but not limited to the Defendant's criminal history, the nature and circumstances of the instant convictions and relevant conduct, the need to promote respect for the law, and to provide adequate deterrence to the Defendant, the Court should vary upward from the applicable guideline range and impose a sentence of 150 months on Count One, and a sentence of 120 months on Count Two, to be served concurrently.

## I.  BACKGROUND

Sometime in October 2015, CHANEY knowingly became part of a plan with others to take jewelry, precious metals, and U.S. currency from a local jewelry distributor by force and threats of violence. The jewelry distributor engaged in interstate commerce. In accordance with this plan, CHANEY agreed to assist at least two co-conspirators in the robbery, which was to take place sometime in November 2015.

As part of the plan, on October 25, 2015, CHANEY accompanied a co-conspirator to meet with an individual whom the conspirators believed was a jewelry distributor and who was the intended victim for their planned armed robbery. The person who the defendant and his co-conspirator met with that day was actually an undercover FBI agent, who had previously been inserted in place of the jewelry dealer. CHANEY's co-conspirator placed an order to purchase approximately $100,000 worth of jewelry and precious metals. Another meeting was then planned where, instead of actually purchasing $100,000 worth of precious metals, the conspirators would instead rob the jewelry dealer of the ordered items, as well as any other currency or valuable items the jewelry dealer had in his possession at the time of the robbery. During this time period, CHANEY's co-conspirator made specific, detailed threats to kill the jeweler as part of the robbery scheme to a confidential informant, explaining to that confidential

informant exactly how the co-conspirator would kill the jeweler and subsequently dispose of the jeweler's corpse. The co-conspirator also explained to the confidential informant that one of the individuals involved in the robbery would be CHANEY, who the co-conspirator explained was selected because CHANEY will do "whatever." On November 8, 2015, the FBI arrested CHANEY and his co-conspirators before they could commit the robbery.

Prior to his arrest, CHANEY also assisted in a plan to purchase firearms and explosives for himself and a co-conspirator. Both CHANEY and the co-conspirator had each previously been convicted of a crime punishable by imprisonment for a term exceeding one year. CHANEY's co-conspirator made arrangements for the purchase of these firearms with an individual who, unbeknownst to the conspirators, was working for the FBI. CHANEY and his co-conspirator attended a meeting with this arms dealer on October 25, 2015, during which time CHANEY's co-conspirator inspected weapons and silencers, and placed an order for automatic weapons, explosives, and a pistol with a silencer, to be paid by the co-conspirator and delivered at a later date. On November 8, 2015, the co-conspirator called the undercover FBI contact and agreed to meet and purchase these weapons; however, later that morning it was CHANEY who arrived at the meeting to conduct the transaction. CHANEY inspected and paid for the following:

a) A Colt Industries M-16A 5.56 mm assault rifle, with 30-round magazines included,

b) A Silencer, designed to fit the above M-16A assault rifle,

c) An HK .45 caliber pistol,

d) A Silencer designed to fit that .45 caliber pistol, and

    e) An Industrial use cast booster explosive with detonation cord and explosive blasting caps.

After CHANEY paid for these firearms, silencers, and explosives, FBI agents immediately arrested him, and arrested his co-conspirators a short time later.

## II.   MOTION FOR VARIANCE AND POSITION ON SENTENCING

The United States recommends a sentence of 150 months on Count One, which is the combined result of a one-level upward variance in the Defendant's criminal history category (from IV to V) and a two-level upward variance in the Defendant's total offense level (from Level 25 to 27), yielding a new advisory guidelines range of 120-150 months.

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *Id.* (*quoting United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination:

> [A] sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (*quoting* 18 U.S.C. § 3553(a)).

Moreover, in selecting a sentence that serves the factors set forth in § 3553(a), "no limitation shall be placed on the information concerning the background, character, and conduct

of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Similarly, though cast in the language of departures, various guidelines provisions and case law support courts' taking into account of all relevant information in fashioning an appropriate sentence for a particular defendant. "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. Moreover, a "sentencing court may consider conduct of which a defendant has been acquitted," *United States v. Watts*, 519 U.S. 148 (1997), or for which he was never charged. *See generally United States v. Fokkoun-Ngassa*, 253 Fed. Appx. 269, 270 (4th Cir. 2007)(collecting cases); *see also* U.S.S.G. § 5K2.21 (justifying upward departures for conduct "underlying a potential charge not pursued in the case . . . for any other reason; and . . . that did not enter into the determination of the applicable guideline range.").

The United States submits that consideration of the Section 3553(a) sentencing factors militate in favor of an upward variance. First, the defendant has demonstrated a complete lack of respect for the law, as evidenced by his return to violent criminal activity barely eight months after being released from prison for convictions related to his commission of other, unsettlingly similar violent criminal activity. Second, the defendant's criminal history category, while correctly calculated, underrepresents the true nature of his criminal history. Finally, the defendant was clearly not deterred by his previous eight year period of incarceration, having engaged in the above-described criminal activity shortly after being released and while on supervision for those state convictions; a lengthy prison sentence is necessary to both deter the

5

defendant and protect the public from any future crimes that the defendant may commit – a prospect that the defendant's actions demonstrate is a legitimate concern.

### A. Nature and Circumstances of the Offense; Provide Adequate Punishment

Here, CHANEY willingly agreed to become part of a conspiracy to commit an armed robbery of a local businessman, during which conspiracy his co-conspirator made credible threats to kill the intended victim as an integral part of the robbery scheme. CHANEY also completed an arms deal where two illegal firearms, both with silencers attached, and one explosive device were purchased.

The circumstances of these offenses – even without further consideration of CHANEY's particular history and characteristics – demonstrate CHANEY's blatant disregard for the law, as well as the safety of individuals in the community at large, and provides ample reason for the Court to grant an upward variance.

### B. History and Characteristics of the Defendant

In addition to the information stated above regarding the circumstances of CHANEY's offenses, his criminal history reveals a violent, unrepentant recidivist. His criminal history category, while correctly calculated by the probation officer, underrepresents the true nature of the defendant's criminal history.

1. <u>Violent Recidivism</u>

The defendant knowingly and willingly agreed to enter into a conspiracy to conduct an armed robbery of a precious metals dealer. The defendant's co-conspirator acknowledged to law enforcement that the unfortunate target of the robbery would very possibly be killed during the operation. The precious metal dealer, of course, had already met with the defendant's co-conspirator, and at that meeting, agreed to meet again to supply the co-conspirator with

$100,000 worth of diamonds and precious metals.  The precious metal dealer had seen the co-conspirator's face; knew his voice; had his phone number.  *See* PSR ¶¶ 6, 13-15.  Had the conspirators' planned armed robbery been allowed to continue, the likelihood that the conspirators would have allowed the precious metal dealer to live – able to identify the co-conspirator – is exceedingly slim.

Not surprisingly, the conspirators' weapons order included a "pistol with a silencer."  PSR ¶ 18.  When the defendant arrived, on November 8, to complete that weapons purchase, he paid the undercover agents for not one, but two silencers.  PSR ¶¶ 6, 22.

At the point that the defendant purchased those firearms, explosives, and silencers, he had been out of prison for less than eight months.  The time the defendant spent in prison – approximately eight years – was the result of the his convictions for shooting two individuals in the course of an attempted robbery in June 2006.  During that botched armed robbery, the defendant – while wearing body armor – used an assault rifle to shoot his two victims.

The similarities between the circumstances of the defendant's 2006 convictions and those surrounding the instant conspiracy are stark.  In both conspiracies, the defendant agreed to participate in an armed robbery.  In both conspiracies, the defendant planned to be heavily armed.  In both conspiracies, the conspirators planned to utilize body armor.[1]  The defendant was invited to participate in the instant conspiracy *because* of his violent criminal history: "Ron[ald] . . . is down for whatever," the conspiracy's ringleader assured the government's confidential source.[2]  The defendant did not disappoint his co-conspirators.  He agreed to

---

[1] Corroborating his co-conspirator's statements that the robbery would involve body armor, a search of the defendant's home following his arrest uncovered a set of body armor.

[2] The PSR notes the defendant's commissioning of a tattoo of a "rifle" across the defendant's
[2] The PSR notes the defendant's commissioning of a tattoo of a "rifle" across the defendant's upper back; upon information and belief, the "rifle" depicted in the tattoo is actually an AK-47

7

participate in the armed robbery; agreed to illegally purchase firearms and silencers; agreed to lend his criminal expertise to the conspiracy.

The defendant's eight year term of incarceration clearly did not have any reforming or sobering effect on him. His conduct in this case demonstrates that he is a violent, dangerous recidivist, undeterred by a long term of incarceration and unconcerned with the possibility of incurring a second, even lengthier one.

    2.  <u>Underrepresented Criminal History</u>

While the PSR correctly calculates the defendant's total criminal history score at eight points (placing him in Criminal History Category IV), that calculation underrepresents the reality of the defendant's criminal history. The defendant has been convicted of six state felonies related to the defendant's attempted robbery in June 2006. One of those felonies (a malicious wounding conviction) constituted three points; three other felonies netted one point each. The remaining two felonies, pursuant to the restriction noted in Section 4A1.1(e)'s restriction, are not reflected in the defendant's criminal history score.[3]

Those additional, uncounted felony convictions – a conviction for Malicious Wounding and a conviction for Wearing Body Armor During a Violent or Drug Crime – are serious, dangerous crimes. They are indisputably part of the defendant's *actual* criminal history, and as such, the defendant's *guidelines* criminal history – while legally correct – understates the true nature and extent of the defendant's previous criminal activity.

---

assault rifle, the same weapon the defendant is believed to have used to shoot his two victims during the botched 2006 armed robbery.

3 Pursuant to Section 4A1.1(e), the probation officer is limited to assessing one point only for "each prior sentence resulting from a conviction of a crime of violence . . . up to a total of 3 points for this subsection." U.S.S.G. § 4A1.1(e).

8

The Court's sentence should reflect the true nature of the defendant's criminal history and the danger that he poses to the community; an upward variance that accounts for the nature of his recidivism and the true nature of his criminal history will do precisely that.

**C.     Need to Deter Future Criminal Conduct and Protect the Public from Defendant's Future Criminal Conduct**

As noted above, the defendant was released from state prison in March 2015, after serving approximately eight years for his 2006 attempted armed robbery and malicious wounding convictions. Within eight months, he had returned to plotting another violent armed robbery attempt, the completion of which appeared likely to involve the execution of a jewelry dealer; and purchasing multiple firearms, silencers, and explosives from individuals he believed to be illegal arms dealers.

The defendant was not deterred by his previous, eight-year period of incarceration. A much lengthier sentence is necessary to deter the defendant from committing future crimes – and relatedly, such a sentence is necessary to safeguard the public from the defendant's proclivity to commit dangerous, violent crimes. The protection of the public is a real concern in this case, and one that should be paramount to the Court in fashioning a sentence for the defendant.

## CONCLUSION

For the reasons stated above, the United States submits that a one-level increase in CHANEY's criminal history category calculation (from IV to V) and a two-level increase in CHANEY's base offense level total (an increase from level 25 to 27) are appropriate. These increases result in a guidelines range of 120-150 months. The Government submits that a sentence at the top end of the variant advisory guidelines range, **150 months**, is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____/s/_____
Thomas A. Garnett
Assistant United States Attorney
Virginia Bar Number 86054
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax: 804-771-2316
Email: Thomas.A.Garnett@usdoj.gov


Peter S. Duffey
Assistant United States Attorney
Virginia Bar No. 39477
Assistant U. S. Attorney
Office of the U.S. Attorney
600 East Main Street, Suite 1800
Richmond, Virginia 23219
(804) 819-5400
(804) 771-2316 (fax)
peter.duffey@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of June, 2016, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF filing system which will then send a notification of such filing (NEF) to counsel of record.

                                                /s/
                                    Thomas A. Garnett
                                    Assistant United States Attorney
                                    Virginia Bar Number 86054
                                    United States Attorney's Office
                                    919 East Main Street, Suite 1900
                                    Richmond, Virginia   23219
                                    Phone: 804-819-5400
                                    Fax:    804-771-2316
                                    Email: Thomas.A.Garnett@usdoj.gov